IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**PATRICK GORDON,**
**#N50657,**

          **Plaintiff,**

vs.                                 Case No. 17-cv-00143-DRH

**J. CAMPANELLA,**
**LUCE,**
**P. GEORGE,**
**BUCKMEIER,**
**MAJOR CAMPBELL,**
**LIEUTENANT PARISH,**
**UNKNOWN PARTY,**
**WEXFORD HEALTH SOURCES, INC.**
**DOCTOR APOSTOL, and**
**VINEYARD,**

          **Defendants.**

## <u>MEMORANDUM & ORDER</u>

**HERNDON, District Judge:**

    Plaintiff Patrick Gordon, an inmate who is currently incarcerated at Vienna Correctional Center ("Vienna"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights at Vienna. (Doc. 1). According to the Complaint, Plaintiff was denied treatment for an ear infection from March 13, 2016 until January 24, 2017. (Doc. 1, pp. 6-14). He was not referred to an ear, nose, and throat specialist until eight months after his diagnosis. *Id.* As a result of this delay, Plaintiff endured unnecessary pain and suffered permanent hearing loss. *Id.* He now requires the use of hearing aids.

Plaintiff names the following defendants in connection with his federal and state claims for the denial of adequate medical care and mishandling of his grievances: Warden Campanella, Assistant Warden Luce, Health Care Administrator George, Doctor Apostol, Counselor Buckmeier, Major Campbell, Lieutenant Parish, ADA Coordinator Vineyard, Unknown Party/Utilization Management, and Wexford Health Sources, Inc. (Doc. 1, pp. 1-3). Plaintiff seeks monetary damages and injunctive relief against the defendants. (Doc. 1, pp. 14-19).

This case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint survives preliminary review under this standard.

## **The Complaint**

According to the Complaint, Plaintiff suffered from an untreated, diagnosed ear infection for eight months at Vienna. (Doc. 1, pp. 6-13). During this same time period, he made thirty-seven visits to the prison's health care unit ("HCU"). (Doc. 1, p. 15). He was repeatedly prescribed eye drops for the ear infection. (Doc. 1, pp. 6-13). Plaintiff's symptoms grew worse. *Id*. When he was finally referred to a specialist, Plaintiff learned that he suffered permanent hearing loss in his left ear and required a hearing aid for his right ear. *Id*. He now claims that the defendants were negligent in their treatment of him and responded to his serious medical needs with deliberate indifference. (Doc. 1, p. 18).

Plaintiff provides the following timeline of events in support of his claims:

December 30, 2015:   Plaintiff visited the HCU with complaints of left ear and neck pain, bad headaches, and shortness of breath. He was told that his condition was "nothing serious." (Doc. 1, p. 6).

February 25, 2016:   Plaintiff went to the HCU again with complaints of pain in his left ear and the left side of his head. He was reminded that he was only in the HCU for an appointment with the eye doctor and told to flush his ear with warm soapy water and to take an aspirin. *Id*.

3

| | |
|---|---|
| March 31, 2016: | After speaking directly with Lieutenant Parish and Assistant Warden Luce about his health concerns, Plaintiff awoke to find blood and puss all over his pillow and shirt. Doctor Apostol diagnosed Plaintiff with an ear infection the same day and prescribed him eye drops for the ear infection. *Id*. |
| April 9, 2016: | Plaintiff sent three requests to see Doctor Apostol after the eye drops made his left ear worse. *Id*. |
| April 27, 2016: | Plaintiff met with a nurse in the HCU, who claimed that she only received one of the three sick call slips that he submitted. After requiring Plaintiff to pay a third co-pay[1] for the visit, the nurse looked into his left ear and diagnosed him with a perforated ear drum. She gave Plaintiff acetaminophen (325 mg) and referred him to the doctor. Plaintiff filed a grievance to complain about the "medical neglect" and the nurse's "bad attitude." (Doc. 1, p. 7). |
| April 28, 2016: | Plaintiff met with Doctor Apostol and complained of pain in his ear and neck that radiated into his left eye and caused throbbing headaches. Instead of examining Plaintiff, the doctor prescribed him more eye drops, Claritin, and ibuprofen. Plaintiff received no antibiotics. *Id*. |
| May 10, 2016: | After blood was drawn from Plaintiff for "no reason," he spoke with Warden Campanella about his ear infection. The warden indicated that she was going to speak with Administrator George. In addition, Plaintiff wrote "several times" to ADA Coordinator Vineyard. *Id*. |

---

[1] Plaintiff takes issue with the large number of copayments he was required to pay for medical services related to his ear infection. However, an inmate's constitutional rights are not violated by the collection of a fee for prison medical or dental services. Whether or not a statutory exemption should apply to the co-payment rule is a question of state law, not cognizable in a § 1983 action. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("the imposition of a modest fee for medical services, standing alone, does not violate the Constitution"). Should Plaintiff wish to pursue this matter further, he must do so in state court.

| | |
|---|---|
| May 17, 2016: | A collegial review of Doctor Apostol's recommendations for diagnosis and treatment of Plaintiff was commenced. (Doc. 1, p. 8). |
| June 1, 2016: | Plaintiff directed multiple written requests for treatment and grievances regarding the lack thereof to George, Vineyard, Campanella, Luce, Buckmeier, Parish, and Campbell.  *Id.* |
| June 7, 2016: | Plaintiff filed another grievance indicating that he was misdiagnosed with an ear infection when his condition was far more serious.  *Id.* |
| June 17, 2016: | After Plaintiff described his symptoms of hearing loss and significant pain to a nurse at sick call, she indicated that something was "seriously wrong."  The nurse then observed gray and red inflammation when examining Plaintiff's left ear.  *Id.* |
| June 21, 2016: | Plaintiff spoke with Doctor Apostol on the call line.  The doctor told Plaintiff that he was still waiting for the results of the collegial review.  *Id.* |
| June 27, 2016: | Doctor Apostol attempted to conduct a hearing test on Plaintiff but did not know how to use the equipment. When he asked a nurse for help, she refused to assist the doctor and walked away "with an attitude."  Doctor Apostol indicated that Plaintiff failed his hearing test in both ears. (Doc. 1, pp. 8-9). |
| June 28, 2016: | Plaintiff spoke with Counselor Buckmeier about his medical issues and was told to file a grievance.  When Plaintiff explained that he had filed many grievances, the counselor said he received none of them.  (Doc. 1, p. 9). |
| July 9 or 10, 2016: | Plaintiff spoke with Warden Campanella about his miscellaneous issues, including his ear infection, stomach issues, staff conduct, and grievances.  Rather than addressing his complaints, the warden asked him if he had ever considered a prison transfer.  *Id.* |
| August 5, 2016: | Plaintiff spoke with Doctor Apostol on the call line and complained of persistent symptoms that now included a possible kidney or urinary tract infection due to |

5

|  |  |
|---|---|
| | overconsumption of pain relievers. Plaintiff reported taking 6-10 pills each day that he purchased from commissary in order to control his ear pain. In response to Plaintiff's complaints, Doctor Apostol prescribed more eye drops. *Id.* |
| August 16, 2016: | Plaintiff spoke with Doctor Apostol again on the doctor call line. He reported "ear damage," dizziness, nausea, throbbing head pain, and difficulty walking straight. (Doc. 1, p. 10). |
| August 31, 2016: | Plaintiff was sent to Marion Hearing Center, where the hearing instrument specialist recommended an appointment with an ear, nose, and throat specialist ("ENT") and an MRI to determine the extent of damage to Plaintiff's ear. The instrument specialist also recommended a right side hearing aid, but said that nothing could be done for the left side. *Id.* |
| September 12, 2016: | When Plaintiff returned to Marion Hearing Center to pick up his hearing aid, the same specialist again "strongly" recommended that he see an ENT and undergo an MRI. The collegial review board denied the request the same day. The doctor prescribed Plaintiff Tramadol for pain but warned him that Administrator George would cancel the prescription as soon as he found out about it. (Doc. 1, pp. 10-11). |
| September 19, 2016: | Doctor Apostol indicated that he would appeal the collegial review board's decision. Plaintiff received and reviewed his medical records from Marion Hearing Center and noted that the records incorrectly attributed his hearing loss to a "child, family genetic history." (Doc. 1, p. 11). |
| October 3, 2016: | Plaintiff filed an emergency grievance for the "denied ENT," and it was sent to Warden Campanella. *Id.* |
| October 12, 2016: | The collegial review board finally approved the request for a referral to an ENT. *Id.* |
| November 21, 2016: | Plaintiff was sent to Midwest Ear Nose & Throat Clinic, where a physician's assistant recommended an |

|  |  |
|---|---|
|  | MRI, a possible left side hearing aid, and medication. (Doc. 1, p. 12). |
| November 30, 2016: | The collegial review board denied the request for an MRI even though it was submitted by the outside specialist. An appeal was filed. *Id*. |
| December 5, 2016: | Plaintiff received a copy of his medical file. *Id*. |
| December 13, 2016: | Plaintiff received a letter from Wexford Health Sources, Inc. denying the request for an MRI of Plaintiff's brain stem with dye. The same document showed that "Doctor Ritz" approved the request. *Id*. |
| January 9, 2017: | Plaintiff was sent to Herrin Hospital for an MRI of his brain. (Doc. 1, p. 13). |
| January 13, 2017: | Plaintiff met with a doctor for a follow-up visit to discuss the MRI. The doctor said, "I've heard about you. . . . I'm not doing anything for you[.] [Y]ou are seeing me so I can tell you that you don't have a tumor." *Id*. |
| January 16, 2017: | Plaintiff filed a grievance to complain about the doctor who conducted the follow-up appointment because he did not offer a treatment plan or prescribe pain medication. The doctor also did not give Plaintiff "anything" for his stomach or blood in his stool. The doctor simply suggested that Plaintiff see his care provider. *Id*. |

(Doc. 1, pp. 6-13).

Between March 13, 2016 and January 24, 2017, Plaintiff made multiple requests for treatment of his ear infection. *Id*. He also submitted numerous grievances to complain about the denial of treatment. *Id*. Plaintiff claims that the defendants routinely mishandled the grievances, by ignoring, delaying, and denying them. (Doc. 1, p. 14). He also claims that they responded to his serious medical needs with deliberate indifference and negligence. (Doc. 1, p. 18). He

7

seeks monetary damages and injunctive relief against them. Plaintiff's request for injunctive relief is extensive. (Doc. 1, pp. 14-18). He asks the Court to issue an Order requiring Vienna officials to rewrite the policy for processing grievances (Doc. 1, p. 14), to rewrite the procedure and timeline for processing inmate medical requests (Doc. 1, pp. 15-17), and to terminate the prison's employment contract with several defendants. (Doc. 1, pp. 16-19).

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint (Doc. 1) into the following counts:

**Count 1** - Eighth Amendment deliberate indifference to medical needs claim against Defendants for providing Plaintiff with inadequate medical care for his left ear infection at Vienna from March 13, 2016 until January 24, 2017.

**Count 2** - Fourteenth Amendment due process claim against Defendants for mishandling Plaintiff's grievances addressing his inadequate medical care at Vienna from March 13, 2016 until January 24, 2017.

**Count 3** - Illinois negligence and/or medical malpractice claim against Defendants for providing Plaintiff with inadequate treatment for his left ear infection at Vienna from March 13, 2016 until January 24, 2017.

As discussed in more detail below, Count 1 survives preliminary review against all of the defendants, except Unknown Party/Utilization Management and Wexford Health Sources, Inc. Count 2 does not survive preliminary review and

8

shall be dismissed with prejudice against all of the defendants. Finally, Count 3 shall be dismissed without prejudice.

### Claim Subject to Further Review

### Count 1

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII. The Eighth Amendment safeguards prisoners against a lack of medical care that may result in pain and suffering that serves no penological purpose. *See Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citations omitted); *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). In order to state a claim, a plaintiff must show that: (1) his medical need was sufficiently serious (a subjective standard); and (2) the state officials acted with deliberate indifference to his medical needs (a subjective standard). *Sherrod v. Lingle*, 223 F.3d 605, 619 (7th Cir. 2000).

The allegations in the Complaint satisfy the objective component of this claim for screening purposes. A medical condition is considered objectively serious if it has been diagnosed by a physician as requiring treatment or would be obvious to a layperson. *See Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citing *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009)). Plaintiff's ear infection was ultimately diagnosed by a prison nurse, prison doctor, and two specialists. The delay in diagnosis and treatment caused Plaintiff to suffer

months of unnecessary pain and hearing loss. *See Zentmeyer v. Kendall County*, 220 F.3d 805, 810 (7th Cir. 2000) (an ear infection, though a "common malady," could be deemed objectively serious where it "inflicted prolonged suffering" and required extensive treatment). *See also Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (condition is objectively serious if the "failure to treat it could result in further significant injury or unnecessary and wanton infliction of pain"). The ear infection described by Plaintiff is sufficiently serious to support an Eighth Amendment claim at screening.

In order to survive preliminary review, the Complaint must also satisfy the subjective component of Plaintiff's Eighth Amendment claim. To do so, the allegations must suggest that each defendant exhibited deliberate indifference to his serious medical need. This is shown when prison officials "know of and disregard an excessive risk to inmate health." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). They must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and "must also draw the inference." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

The Complaint suggests that the following defendants were aware of Plaintiff's ear infection, hearing loss, and related symptoms but failed to take steps to secure timely treatment: Warden Campanella, Assistant Warden Luce, HCU Administrator George, Doctor Apostol, ADA Coordinator Vineyard, Counselor Buckmeier, Major Campbell, and Lieutenant Parish. Plaintiff informed each of these defendants verbally or in writing that he was suffering from an

untreated or improperly treated ear infection, hearing loss, and pain. He requested immediate medical care. These defendants ignored his requests, unreasonably delayed treatment, or undertook an ineffective course of treatment. Count 1 is subject to further review against all of them. *But see Phillips v. Wexford Health Sources, Inc.*, 522 F. App'x 364 (7th Cir. 2013) (no deliberate indifference found where prison officials and medical providers promptly treated inmate's ear infection with Bactrim antibiotic).

The Complaint does not articulate a claim of deliberate indifference against the Unknown Party identified only as "Utilization Management" in the case caption. (Doc. 1, p. 1). Plaintiff includes no allegations against this defendant in the statement of claim. (Doc. 1, pp. 6-13). "A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption." *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Section 1983 creates a cause of action based on personal liability and predicated upon fault. *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). "[T]o be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Id.* at 810. Because Plaintiff sets forth no allegations against "Utilization Management," the Complaint does not suggest that this defendant caused a violation of his constitutional rights. Count 1 shall be dismissed without prejudice against this defendant.

Wexford is a private corporation that serves as Vienna's healthcare provider. Plaintiff names Wexford as a defendant but includes few allegations

against this defendant in the Complaint. According to the allegations, Wexford allegedly denied the request for an MRI of Plaintiff's brain stem in December 2016. (Doc. 1, p. 12). Plaintiff received a letter to this effect on Wexford's letterhead. *Id*. However, a note from Doctor Ritz on the same letterhead indicated that the test was approved, and Plaintiff received an MRI less than a month later. (Doc. 1, p. 13).

It is therefore unclear why Plaintiff named Wexford as a defendant in this action. By all indications, Plaintiff did so only because the private corporation employed health care providers who worked at Vienna. This is not enough to state a claim against Wexford. Plaintiff cannot rely on a theory of *respondeat superior*, or supervisory liability, when bringing a claim under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). A private corporation will generally only be held liable under § 1983 for an unconstitutional policy or custom that results in a constitutional deprivation. *Perez v. Fenoglio*, 792 F.3d 768, 780 (7th Cir. 2015) (citing *Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2014)). The Complaint describes no such policy or custom attributable to Wexford. Therefore, Count 1 shall be dismissed without prejudice against this defendant as well.

### Claims Subject to Dismissal

### Count 2

The Complaint states no independent Fourteenth Amendment due process claim against the defendants for mishandling his grievances. The Seventh Circuit

Court of Appeals has long held that "a state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Furthermore, a cause of action does not arise where a plaintiff files a grievance and simply disagrees with the outcome. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005). Under the circumstances, Count 2 shall be dismissed with prejudice against all of the defendants.

### Count 3

Plaintiff also asserts a negligence claim against the defendants. However, a defendant can never be held liable under § 1983 for negligence. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995). As the Seventh Circuit has explained, "medical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim." *Gutierrez*, 111 F.3d at 1374. *See also Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) ("Mere negligence or even gross negligence does not constitute deliberate indifference.").

But where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), if the state claims "derive from a common

nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). "A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.,* 72 F.3d 1294, 1299 (7th Cir. 1995)). Although this Court has supplemental jurisdiction pursuant to § 1367(a) over the state law negligence claim, the Court's analysis does not end there.

Under Illinois law, a plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: (1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); (2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or (3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this case the written report shall be filed within 90 days of receipt of the records). *See* 735 ILL. COMP.

STAT. §5/2-622(a).[21] A separate affidavit and report shall be filed as to each defendant. *See* 735 ILL. COMP. STAT. § 5/2-622(b).

Failure to file the required certificate/affidavit is grounds for dismissal of the claim. *See* 735 ILL. COMP. STAT. § 5/2-622(g); *Sherrod*, 223 F.3d at 613. However, whether such dismissal should be with or without prejudice is up to the sound discretion of the court. *Sherrod*, 223 F.3d at 614. "Illinois courts have held that when a plaintiff fails to attach a certificate and report, then 'a sound exercise of discretion mandates that [the plaintiff] be at least afforded an opportunity to amend her complaint to comply with section 2-622 before her action is dismissed with prejudice.'" *Id.*; *see also Chapman v. Chandra*, No. 06-cv-651-MJR, 2007 WL 1655799, at *4-5 (S.D. Ill. June 5, 2007).

In the instant case, Plaintiff failed to file the necessary affidavit/certificate and report. Therefore, the claim in Count 3 shall be dismissed. However, the dismissal shall be without prejudice at this time, and Plaintiff will be allowed 60 days (**on or before May 22, 2017**) to file the required affidavit if he wishes to revive the claim and pursue it in this action. Should Plaintiff fail to timely file the required affidavits, the dismissal of Count 3 shall become a dismissal with prejudice upon the expiration of this deadline. *See* FED. R. CIV. P. 41(b).

---

[2] The August 25, 2005, amendments to a prior version of this statute were held to be unconstitutional in 2010. *Lebron v. Gottlieb Mem. Hosp.*, 930 N.E.2d 895 (Ill. 2010) (Holding P.A. 94-677 to be unconstitutional in its entirety). After *Lebron*, the previous version of the statute continued in effect. *See Hahn v. Walsh*, 686 F. Supp. 2d 829, 832 n.1 (C.D. Ill. 2010). The Illinois legislature re-enacted and amended 735 ILL. COMP. STAT. §5/2-622 effective January 18, 2013 (P.A. 97-1145), to remove any question as to the validity of this section. *See* notes on Validity of 735 ILL. COMP. STAT. § 5/2-622 (West 2013).

### **Claims Against Non-Parties**

Any claim that Plaintiff intended to assert in the Complaint against a non-party is considered dismissed without prejudice from this action. In the Complaint, Plaintiff referred to a prison nurse, outside hearing specialist, outside physician's assistant, and outside doctor. Plaintiff did not name any of these individuals as defendants in the case caption, even in generic terms. (Doc. 1, p. 1). When parties are not listed in the caption, this Court will not treat them as defendants, and any claims against them should be considered dismissed without prejudice. *See* FED. R. CIV. P. 10(a) (noting that the title of the complaint "must name all the parties"); *Myles v. United States*, 416 F.3d 551, 551-52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be "specif[ied] in the caption"). Accordingly, all claims against these individuals are considered dismissed without prejudice.

### **Interim Relief**

In his Complaint, Plaintiff seeks injunctive relief. However, he did not request any sort of urgent relief related to his medical needs, such as a temporary restraining order ("TRO") or a preliminary injunction pursuant to Rule 65(a) and (b) of the Federal Rules of Civil Procedure. Plaintiff also did not file a separate motion seeking this relief. If emergency relief becomes necessary during the pending action, Plaintiff may file a separate Motion for TRO and/or Preliminary Injunction that is consistent with the requirements set forth under Rule 65(a) or (b).

**Pending Motion**

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) shall be **REFERRED** to a **United States Magistrate Judge** for a decision.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** is **DISMISSED** without prejudice against Defendants **UNKNOWN PARTY/UTILIZATION MANAGEMENT** and **WEXFORD HEALTH SOURCES, INC.** for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that **COUNT 2** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

**IT IS ALSO ORDERED** that **COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. If Plaintiff wishes to revive this claim, he is hereby **ORDERED** to file the required affidavits within 60 days (**on or before May 22, 2017**). Should Plaintiff fail to timely file the required affidavits, the dismissal of Count 3 will become a dismissal with prejudice. *See* 735 ILL. COMP. STAT. § 5/2-622; FED. R. CIV. P. 41(b).

**IT IS ORDERED** that **COUNT 1** is subject to further review against Defendants **CAMPANELLA, LUCE, GEORGE, APOSTOL, VINEYARD, BUCKMEIER, CAMPBELL,** and **PARISH**. As to **COUNT 1**, the Clerk of Court shall prepare for Defendants **CAMPANELLA, LUCE, GEORGE, APOSTOL, VINEYARD, BUCKMEIER, CAMPBELL,** and **PARISH**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of

Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading

to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a **United States Magistrate Judge** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to a **United States Magistrate Judge** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall

be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

Signed this 23rd day of March, 2017.

Digitally signed by
Judge David R. Herndon
Date: 2017.03.23
14:45:41 -05'00'

**United States District Judge**